# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gero von Dehn,                            :
              Petitioner      :
                                     :
           v.                         :   No. 1211 C.D. 2017
                                     :   Submitted: February 16, 2018
Unemployment Compensation      :
Board of Review,                  :
             Respondent    :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**              **FILED: April 2, 2018**

Gero von Dehn (Claimant), representing himself, petitions for review from an order of the Unemployment Compensation Board of Review (Board), affirming a referee's decision finding him ineligible for unemployment compensation (UC) benefits under the Unemployment Compensation Law[1] (UC Law). The Board found Claimant ineligible under Section 402(b) of the UC Law, 43 P.S. §802(b), based on his voluntary resignation without a necessitous and compelling reason. Upon review, we reverse.

## I. Background

The facts of this case, while straightforward in themselves, reflect confusion on the part of the parties, the Department of Labor and Industry (Department), the referee, and the Board. This confusion apparently arose from Claimant's concurrent employment by both a full-time and an intermittent part-time

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §§751-919.10.

employer. After a layoff from his full-time job, Claimant applied for UC benefits. However, between the date of the layoff and the date he applied for UC benefits, Claimant worked a single shift for his intermittent part-time employer. This circumstance apparently led to a mistaken designation of the intermittent part-time employer, rather than the full-time employer, as the separating employer for UC purposes.

Claimant's intermittent part-time employer, Camp Bow Wow, is a commercial daycare facility for dogs. From 2013 through 2016, Claimant worked sporadically for Camp Bow Wow on a part-time basis. Claimant also worked a number of other jobs, including summer jobs outside Pennsylvania. He was also self-employed at times. The parties' practice was that Camp Bow Wow would notify Claimant when it had shifts available for him, and Claimant would accept shifts when he was available to work them. However, Camp Bow Wow set its schedule several weeks in advance and did not allow any changes or cancellations once a schedule was set.

Upon returning from an out-of-state summer job in September 2016, Claimant succeeded in obtaining membership in the International Association of Theatrical Stage Engineers (Union). For the next three months, Claimant worked full-time, plus overtime, on a Union job constructing sets for a television series produced by Entertainment Partners Enterprise (Full-Time Employer).

In December 2016, Claimant was laid off from the Union job for Full-Time Employer. He subsequently worked one four-hour shift for Camp Bow Wow

in December 2016. This was the only day Claimant worked for Camp Bow Wow from April to December 2016.

Claimant initially expected to be recalled to work for Full-Time Employer, through the Union, in January 2017. He was required to be on call and to return to work immediately if the Union called him. This circumstance was incompatible with Camp Bow Wow's advance scheduling and refusal to allow cancellations. Based on the gross disparity in earnings between full-time plus overtime pay in the Union job and sporadic part-time work with Camp Bow Wow, Claimant chose not to risk his Union job. He therefore told Camp Bow Wow not to schedule him for future shifts. However, delays occurred in production of the television series, and the Union did not call Claimant back to work for Full-Time Employer in January as anticipated.

Claimant applied for UC benefits in January 2017 because of his loss of wages resulting from his layoff and the delay in resumption of work for Full-Time Employer. However, having worked one day for Camp Bow Wow after the layoff by Full-Time Employer in December 2016, he listed Camp Bow Wow as his "last" employer on his UC benefit application. See Certified Record (C.R.), Item #3. In his employment separation questionnaire, Claimant explained his unemployment as follows:

> I took a summer job in Alaska. When I returned I was hired by [Union]. That work is full-time when we're on. I've been expecting a call back to the [U]nion work since December. Expected call back keeps getting delayed.
>
> Camp Bow Wow schedules 3 weeks in advance. When you can't make it, it's a huge problem. I have explained to

3

them that I could get called back to the [U]nion any day and would have to go. That is unacceptable to Camp Bow Wow under those conditions.

Id.

The UC claim record lists two separating employers. It lists Full-Time Employer first, Camp Bow Wow second, and finally Full-Time Employer again. C.R., Item #1. However, the only employer interview or questionnaire information in the record is from Camp Bow Wow. See C.R., Item #2.

In its separation information, Camp Bow Wow reported it still considered Claimant a part-time employee, and it expected to schedule him for some dates in March 2017.[2] C.R., Item #2. Camp Bow Wow also filed with the Department a request for relief from charges, in which it stated Claimant worked part-time and left for another job, but "seems to come back here & there & we just add him back into payroll." Id. In response to the UC questionnaire, Camp Bow Wow indicated Claimant was on a "leave of absence" rather than a "voluntary quit"; Camp Bow Wow explained: "We thought he would be coming back. He has always taken leaves for another job he worked." Id. Camp Bow Wow added, "[Claimant] travels for other work so we are use[d] to him coming & going. He is still currently an active employee in our payroll system." Id.

The Department issued an initial determination of eligibility for UC benefits. C.R., Item #4. Treating Camp Bow Wow as the separating employer, the

---

[2] Camp Bow Wow apparently did schedule Claimant for a shift in March 2017, but it terminated Claimant's part-time employment when he had to cancel the scheduled shift on one week's notice. The March 2017 termination is not at issue in this case.

4

Department found Claimant voluntarily quit his job with Camp Bow Wow to accept other work (presumably the job for Full-Time Employer). Id. The Department concluded that Claimant established a necessitous and compelling reason for quitting his job with Camp Bow Wow, in that he had a definite job offer for other work prior to quitting. Id.

Camp Bow Wow, which still considered Claimant a current part-time employee, appealed the Department's determination. In an email requesting a continuance of the original hearing date, Claimant explained again that he was laid off from full-time employment through the Union, and that he was not scheduling shifts with Camp Bow Wow because he might be called back to his full-time work at any time. He stated, "I'm confused as to why Camp Bow Wow is even a part of this [UC] process any more than [a] pizza job I had years ago." C.R., Item #7.

At the hearing, Camp Bow Wow's witness stated that Claimant was still on its payroll, and that it submitted a request for relief from charges.[3] Notes of Testimony (N.T.) at 6. Camp Bow Wow's non-attorney representative explained: "We are not here to dispute [Claimant]'s eligibility for benefits. It's really the percentage that we were being allocated versus his primary Employer [i.e., Full-Time Employer], who laid him off." Id.

Claimant testified he was still waiting for a call from the Union to return to work for Full-Time Employer. Id. at 10-12. After answering a series of questions from the referee about his part-time employment with Camp Bow Wow, Claimant

_____

[3] The request for relief from charges is not at issue in this appeal.

5

stated, "I am confused about the entire process, sir. I am not sure what is going on here." N.T. at 14. His confusion appeared to arise from Camp Bow Wow's ongoing involvement as a party; he pointed out, "I had other, I always had other employments from the past too but … [t]hey're not involved with the whole process." N.T. at 15.

The referee reversed the Department's initial determination. Because Claimant did not have a definite return date for his job with Full-Time Employer, the referee concluded Claimant lacked a necessitous and compelling reason to quit his job with Camp Bow Wow. The referee therefore found Claimant ineligible for UC benefits.

Claimant appealed to the Board. In a May 2017 email stating his intent to appeal, Claimant again explained his main employment was with Full-Time Employer, not Camp Bow Wow. C.R., Item #10. The Board affirmed the referee's decision without any separate findings.

In his petition for review to this Court, Claimant explained yet again that he filed for UC benefits because of the layoff by Full-Time Employer. He stated further, " … my issue isn't with Camp Bow Wow. It's the fact that the UC BUR wants to deny me U.C. when I was laid off by my full-time employer …." Pet. for Review at 3.

## II. Issue

On appeal,[4] Claimant, who is not represented by counsel, is not precise in stating a legal issue.[5] However, the record demonstrates he has consistently maintained that he sought UC benefits because of his layoff by Full-Time Employer, and that Camp Bow Wow should not have been involved in his UC claim at all.

---

[4] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006 (Pa. Cmwlth.), appeal denied, 97 A.3d 746 (Pa. 2014).

[5] The record indicates Claimant was no longer receiving UC benefits by the time the referee rendered a decision reversing the initial determination of eligibility. Moreover, Claimant is not seeking any additional UC benefits in this appeal. In his request for Board review, Claimant implied he filed his appeal because of a mistaken belief that a determination of ineligibility would require him to repay immediately the UC benefits he already received. C.R., Item #10 at 4 (forced repayment of UC benefits received would be financially "crushing" to Claimant).

Section 804(b) of the UC Law provides that a person who has received UC benefits "other than by reason of his fault" is not liable for repayment; recoupment can only be obtained by deducting a portion of future UC benefits, if any, paid within three years following the original benefit year. 43 P.S. §874(b); see also Fugh v. Unemployment Comp. Bd. of Review, 153 A.3d 1169 (Pa. Cmwlth. 2017) (en banc).

A finding of fault requires culpable conduct on the part of the claimant, and findings of fact by the Board concerning the claimant's state of mind. Fugh. Here, there was no averment by Camp Bow Wow, the referee, or the Board, and no evidence of record, suggesting any fault on Claimant's part, or even raising that issue. There is no indication that Claimant provided any incorrect information in his application for UC benefits. Neither the referee nor the Board made the requisite findings of fact demonstrating any fault.

Therefore, Claimant cannot be liable to repay any UC benefits. They can only be recouped from future benefits, in the event Claimant seeks further UC benefits within three years of the benefit year, 2017.

Claimant might face the possibility of recoupment in the future, should he again be unemployed and eligible for UC benefits at some point within three years after his previous benefit year. At that point Claimant would be unable to relitigate the Board's decision in this case. Accordingly, we will consider the merits of the appeal.

7

### III. Discussion

The record reveals no dispute that Full-Time Employer was Claimant's main source of income. His employment with Camp Bow Wow, as explained above, was part-time and intermittent.

There also does not appear to be any dispute that Claimant was eligible for UC benefits as a result of his layoff from his job with Full-Time Employer. However, despite the fact that both Full-Time Employer and Camp Bow Wow were listed as separating employers on the Department's UC claim record, the Department, the referee, and the Board all evidently failed to consider Claimant's UC eligibility with reference to Full-Time Employer.

Adopting the decision of the referee, the Board concluded Claimant was ineligible for UC benefits because he voluntarily left his job with Camp Bow Wow without a necessitous and compelling reason. That conclusion was an error of law.

When a claimant who is eligible for UC benefits by reason of separation from full-time employment experiences a subsequent separation from part-time employment, "he is rendered ineligible for further benefits only to the extent that his benefits were decreased by virtue of his part-time earnings." Unemployment Comp. Bd. of Review v. Fabric, 354 A.2d 905, 908 (Pa. Cmwlth. 1976). It is the Board's burden to "establish that a claimant's actual benefits would be increased by virtue of the loss of a part-time job. In other words, the part-time job must have yielded income in excess of the partial benefit credit … before a claimant can be denied any benefits because of a voluntary separation." Id. at 907.

8

Importantly, the reason for the separation from part-time employment is irrelevant to the eligibility analysis. Whether the claimant is laid off, quits voluntarily, or is fired for willful misconduct, the analysis is the same. See Richards v. Unemployment Comp. Bd. of Review, 480 A.2d 1338 (Pa. Cmwlth. 1984); Walsh v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 1248 C.D. 2012, filed May 13, 2013), 2013 Pa. Commw. Unpub. LEXIS 374 (unreported). In such a situation, a determination of whether the claimant had a necessitous and compelling reason for leaving his part-time position has no place in the analysis of his eligibility for UC benefits.

Here, the Board did not calculate Claimant's partial benefit credit, nor did it compare that amount to Claimant's part-time earnings from Camp Bow Wow. Thus, the Board could not and did not sustain its burden of demonstrating that Claimant's separation from Camp Bow Wow rendered him ineligible for UC benefits.

Moreover, the record indicates Claimant's total wages from Camp Bow Wow in 2016 were $74.39. C.R., Item #2. By contrast, he worked 12-hour days for Full-Time Employer for three months, at an hourly wage of $26.50 plus time-and-a-half for overtime. N.T. at 12. Under Section 4(m.3) of the UC law, 43 P.S. §753(m.3), the partial benefit credit is 40% of the claimant's weekly benefit rate. Although the record does not indicate Claimant's UC weekly benefit amount, we do not require any calculation to discern that Claimant's separation from Camp Bow Wow could not have affected the amount of UC benefits to which he was entitled as a result of his layoff by Full-Time Employer.

9

Accordingly, the Board erred as a matter of law by considering whether Claimant had a necessitous and compelling reason for leaving his job with Camp Bow Wow. It necessarily follows that the Board erred by concluding Claimant was ineligible for UC benefits based on the absence of a necessitous and compelling reason for quitting his intermittent part-time job.

## IV. Conclusion

Based on the foregoing, this Court reverses the order of the Board.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gero von Dehn,  :
                Petitioner  :
                          :
          v.  :     No. 1211 C.D. 2017
                          :
Unemployment Compensation  :
Board of Review,  :
                Respondent  :

# **O R D E R**

**AND NOW**, this 2nd day of April, 2018, the order of the Unemployment Compensation Board of Review is **REVERSED**.

 

 

ROBERT SIMPSON, Judge