# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John E. Narducci,                   :
          Petitioner         :
                             :
          v.              : No. 841 C.D. 2017
                             : Submitted: March 8, 2018
Unemployment Compensation   :
Board of Review,             :
          Respondent     :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY
SENIOR JUDGE PELLEGRINI            FILED:  April 4, 2018

      John E. Narducci (Claimant) petitions for review of the Unemployment Compensation Board of Review (Board) decision imposing a fault overpayment of $14,768, and assessing 28 penalty weeks and a $2,215.20 monetary penalty pursuant to Section 804(a) of the Unemployment Compensation Law[1] (Law).  Claimant contends that the Department of Labor and Industry

---

[1] Section 804(a) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 874(a), provides:

> Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue. . . .

(Department), through its Service Centers, did not have jurisdiction to reopen his case ten months after unemployment compensation (UC) benefits were awarded to find that he was ineligible for benefits and to impose fault overpayment and penalties. In the event the Department did have jurisdiction, Claimant contends that it improperly imposed a fault overpayment. For the following reasons, we affirm.

## I.

Claimant worked for PECO Energy (Employer) as a full-time service distribution mechanic between June 10, 2002, and September 13, 2013. On September 13, 2013, Claimant was suspended pending a job review due to an incident in which he threw a bottle of hand soap at a fellow employee and was escorted off the premises. On October 14, 2013, Employer sent Claimant a letter discharging him as of October 11, 2013, based on his violation of safety rules and "actions that were threatening, intimidating, and physically aggressive." (Record (R.) at Item No. 8, Referee's Hearing: Transcript of Testimony w/Claimant Exhibit, dated 10/17/2014.)

Before the discharge letter, on October 13, 2013,[2] Claimant submitted an online application for UC benefits indicating that the reason for separation from his employment was due to lack of work. At some point between October 17, 2013, and October 19, 2013, Claimant received Employer's October 14, 2013 letter

---

[2] This was not recorded in the claim record until October 16, 2013.

notifying him that he had been discharged for cause.  On October 17, 2013, the Department mailed Employer a notification that Claimant had filed for benefits.[3]

On October 21, 2013, the Department sent Employer a Form UC-44F(3), Notice of Financial Determination, that found Claimant financially eligible for benefits,[4] together with a Form UC-44FR, Request for Relief from Charges. Nothing in the record indicates that the Department issued an official Notice of Determination granting Claimant benefits or that the Department sent questionnaires to either Claimant or Employer seeking information regarding the claim.

On October 30, 2013, Claimant spoke to a Department representative, explaining that he was confused about the requirement that he be able and available for work in order to receive benefits.  The Claimant, however, did not correct the reason for his separation from employment in his claim record.

On November 5, 2013, Employer sent a letter to the Department's Charge Office (Charge Office) requesting relief of charges,[5] stating, "[Claimant]

---

[3] This notification is missing from the record.

[4] Notice of Financial Determination (Form UC-44F) lists employers and the amount of wages paid in each quarter of an employee's base year.  The Notice determines "financial eligibility" for UC benefits based on the employee's highest quarterly wages, total base-year wages and credit weeks during the base year.  It establishes a weekly benefit rate, partial disability credit, maximum benefit entitlement and allowances for dependents.  If an applicant is financially ineligible, the determination tells the applicant the reason for ineligibility.

[5] Pursuant to Section 302.1 of the Law, added by Section 3 of the Act of June 17, 2011, P.L. 16, *as amended*, 43 P.S. § 782.1, an employer that has been assigned to pay compensation to **(Footnote continued on next page…)**

was discharged for unacceptable and improper conduct. On 9/12/13 [he] threw a bottle of water at an employee and threw a container of skin cleanser at an employee that left a dent in the wall." (R. at Item No. 3, Employer Separation Information, November 5, 2013 letter.) It was not until December 16, 2013, that the Department noted on Claimant's claim record that Employer had requested a relief from charges. Because of a staff shortage, the Department took no action based on the information contained in that request. On January 22, 2014, the Department placed a general annotation on the claim record indicating that Employer discharged Claimant for cause but again took no action based on that information. Claimant continued to receive benefits until April 19, 2014.

On July 30, 2014, Employer sent a letter to the Charge Office protesting the Monthly Notice of Compensation Charged report requesting investigation into Claimant's matter and noting:

> Our records indicate that, to date, no determination/decision has been issued to the protested claim on the separation issue. If a determination has been issued[,] please forward a copy so that we may complete our files. If a copy is not available, please indicate to what address it was mailed.

(R. at Item No. 3, Employer Separation Information, July 30, 2014 letter.)

---

**(continued…)**

an employee may be relieved of charges for compensation in the event an individual was discharged from the employer for willful misconduct connected with the work.

4

Prompted by Employer's letter, on August 4, 2014, the Department, for the first time, sent questionnaires to both Claimant and Employer. Based upon this information, on August 21, 2014, the Department issued three determinations. The first was a Notice of Determination that denied benefits under Section 402(e) of the Law because Claimant was discharged for cause.[6] The second was a Notice of Determination Overpayment of Benefit (Fault or NonFault) which found that Claimant had a fault overpayment of $14,768 representing the amount of UC benefits he received. The third was a Notice of Determination issuing a 15% penalty of $2,215.20 for over 28 penalty weeks pursuant to Sections 801(b)[7] and (c)[8] of the Law. Claimant timely appealed the three determinations and a Referee held a hearing.

---

[6] 43 P.S. § 802(e) provides that an employee is ineligible for any week:

> In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in [the Law]. . . .

[7] Section 801(b) of the Law provides in relevant part:

> Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact or increase any compensation or other payment under [the Law]. . . may be disqualified in addition to such week or weeks of improper payments for a penalty period of five weeks and for not more than one additional week for each such week of improper payment.

43 P.S. § 871(b).

[8] Section 801(c) of the Law provides in relevant part:

> Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase

**(Footnote continued on next page…)**

At the hearing, Claimant contended that because Employer did not appeal within 15 days of Claimant's grant of benefits, the Department did not have jurisdiction to open the appeal ten months later. In his testimony, Claimant acknowledged that he threw a container of hand soap at a coworker because his coworker brought up a sensitive personal matter. He went on to testify that the reason he filed for UC benefits before he had been formally discharged was because he was not being paid and that he did not intentionally try to defraud or willfully mislead anyone in his application. He further acknowledged that after receiving the letter from Employer detailing the reason for his discharge, he did not provide the Department with the true reason for his lack of work.

Following the hearing, the Referee affirmed the Notices of Determination issued by the Service Center and, on appeal, the Board affirmed.

## II.

Claimant then appealed to this Court, again arguing that the Department did not have authority to reopen his UC claim in 2014 after approving and paying him benefits in October 2013 because the issuance was a final

---

**(continued…)**

> compensation or other payment under this act . . . and as a result receives compensation to which he is not entitled shall be liable to pay to the Unemployment Compensation Fund a sum equal to fifteen per centum (15%) of the amount of the compensation.

43 P.S. § 871(c).

determination that Employer never appealed.[9] The Board argued that it never issued a final determination until August 2014. Claimant also contended that a fault payment and penalties should not have been imposed.

In November 2015, this Court, through Judge Cohn Jubelirer, issued an opinion vacating the Board's decision and remanding for a determination as to whether the Department had jurisdiction to issue the August 21, 2014 determinations.[10] The opinion provided:

> [N]either the Referee nor the Board made findings of fact and conclusions of law with regard to the Service Center determination dates, whether there was in fact a final determination of Claimant's eligibility made in October 2013 as argued by Claimant and, if so, on what basis that determination could be reopened. . . .
>
> This hole in the factual record is crucial for appellate review of whether the Board had jurisdiction to issue the August 21, 2014 determination that Claimant was ineligible for benefits. If the Board is correct that no Notice of Determination was issued in response to Claimant's application for benefits in October 2013, Employer would have had no determination from which to appeal until the Service Center issued its August 21, 2014 determination. Conversely, if a Notice of Determination was issued in October 2013 or shortly thereafter, the appeal period would have long since

---

[9] Pursuant to Section 501(e) of the Law, an employer or claimant may appeal a notice of determination regarding a claimant's eligibility for UC benefits within 15 days of receiving notice from the Department. 43 P.S. § 821(e).

[10] *Narducci v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., 104 C.D. 2015, filed November 4, 2015).

passed and the Board would have lacked subject matter jurisdiction over Claimant's eligibility for UC benefits.

*Narducci v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., 104 C.D. 2015, filed November 4, 2015).  Specifically, the Board was required to make findings of fact and conclusions of law with regard to the Service Center determination dates, whether there was, in fact, a final determination of Claimant's eligibility made in October 2013, and if so, upon what basis should the determination be opened.  We did not address the issue of whether the fault overpayment should have been imposed.

In accordance with this order, the Referee, acting merely as a hearing officer, held three additional hearings in this matter to complete the record as much as possible and to take additional testimony.  At the first hearing, the Referee took the testimony of Blair Stuart (Stuart), a State Examiner for Unemployment Compensation with the Department.  In pertinent part, he testified:

> Q:  [A]ccording to you, this Determination was issued on August 21[.]  Do you know why it was not issued—it looks like an [application] date of October 13, 2013.  Do you know why a Decision was not issued until more than ten months later?
>
> A:  Yes.
>
> Q:  Why is that?
>
> A:  Our office here in Allentown did not receive any notification from the Employer.  That doesn't necessarily mean it wasn't sent.  But I'm just referring to our Service Center in Allentown and our Adjudication Unit did not receive any information until August 4 at 12:38 p.m.

8

That's the first notification we received that Employer was contesting [inaudible] or in this case a Relief from Charge.

\*\*\*

Q: So no Decision was made based upon information that you had at the time in 2013?

A: Correct . . . .

\*\*\*

A: We—because the Claimant built the claim on the Internet and indicated to our knowledge that there was lack of work. There was no notification of a separation issue. Our first notification of that was through information we received through Relief from Charge Unit in Harrisburg . . . .

(R. at Item No. 17, Board Hearing – Remand: Transcript of Testimony, dated 12/4/2015, pp. 9-10.) When it was determined that several pertinent documents were missing from the record, another hearing was scheduled. At the second hearing, it was established that on November 5, 2013, Employer submitted a Request for Relief from Charges recorded in the claim record on December 16, 2013.

Because the record was still not complete, a third hearing was held where the parties entered a stipulation agreeing to the following pertinent facts:

6. A financial determination, form UC-44[F], was generated by the Allentown UC Service Center on October 17, 2013 and mailed to the claimant on October 21, 2013. As best as can be determined, the financial

9

determination, form UC-44F, that was generated in this matter no longer exists in paper or electronic form.

***

7. On October 16, 2013 a form (UC-44F(3)) [Notice of Financial Determination] was generated and mailed to [Employer] on October 17, 2013 as well as Form UC44(FR) Request for Relief From charges, as [Employer] was also a base year employer . . . . As best as can be determined, these forms that were generated in this matter no longer exist in paper or electronic form . . . .

8. A "Request for Wage and Separation Information", Form UC-45 was generated on October 16, 2013 and sent to [Employer] on October 17, 2013 . . . .[11] As best as can be determined, these forms that were generated in this matter no longer exist in paper or electronic form.

---

[11] 34 Pa. Code § 63.53. Form UC-45 provides:

(a) When an employer receives Form UC-45, Notice of Application and Request for Separation Information, or Form UC-45A, Notice of Registration Renewal and Request for Separation Information, he shall complete the form and return it to the local public employment office designated on the form within 4 days from the date on which the form is received.

(b) If an employer contemplates the separation at one time of a large number of employes a local office manager may, at his option, enter into an agreement with the employer to accept a list showing the required information, in lieu of Forms UC-45 and UC-45A.

There is nothing in the record indicating that Employer ever returned that form.

(R. at Item No. 31, Board Hearing – Remand: Transcript of Testimony w/ Claimant Exhibit, dated 5/27/2016, Stipulation of Fact.)

A year after the hearings, the Board issued a decision regarding the questions on remand that it was instructed to answer – *i.e.*, whether there was, in fact, a final determination of Claimant's eligibility made in October 2013 and, if so, on what basis that determination could be reopened. As to whether there was a final determination, the Board found that prior to August 2014, no final determination on eligibility had been found. It stated:

> 10. On October 21, 2013, [Claimant] was found financially eligible for benefits. Neither party appealed this financial determination.
>
> ***
>
> 13. No written determination was issued by the Department because the claimant indicated that he had been laid off for lack of work and the Department received no information from the employer to indicate otherwise.
>
> 14. On November 5, 2013, the employer sent to the Employer's Charge Office a request for relief from charges or a determination on the claimant's eligibility, asserting that the claimant had been terminated from employment due to unacceptable and improper conduct.
>
> 15. The Department received the request for relief from charges on December 16, 2013, but did not act on it. Because of the recession at that time and lack of staff, issues for claimants not receiving benefits took priority over issues for claimants receiving benefits.
>
> 16. The Department continued to pay the claimant UC benefits.

11

17. On July 30, 2014, the employer sent another letter to the Employer's Charge Office protesting the Monthly Notice of Compensation Charged, noting that to date no determination had been made on the claimant's separation eligibility.

(R. at Item No. 32, Board's Decision and Order, dated 5/23/2017 (Ineligible w/Fault Overpayment, Penalty Weeks, and 15% Penalty.))  It then found that because Section 501 of the Law contains no time frame for the Department to issue a determination, it was proper to issue the notice of determination denying benefits and imposing the fault overpayment and penalties even though it was more than ten months after the Department became aware that Claimant had been discharged for cause.  As a result, the Board again imposed a fault overpayment of $14,768 and assessed 28 penalty weeks and a $2,215.20 monetary penalty.  This appeal followed.[12]

## III.

### A.

On appeal, Claimant contends that the Board lacked jurisdiction to issue a notice of determination denying benefits ten months after Claimant was found to be eligible for benefits on October 21, 2013.  He contends that there is nothing in the record to suggest that Employer did not receive notification of that benefits determination.  Essentially arguing that this lack of evidence automatically

---

[12] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact were supported by substantial evidence. *Sheets v. Unemployment Compensation Board of Review*, 708 A.2d 884 (Pa. Cmwlth. 1998).

12

creates a presumption that Employer did receive notice, Claimant contends that the initial notice that the Department found Claimant eligible for benefits on October 21, 2013, triggered a duty on Employer to appeal the decision within 15 days as required by Section 501(e) of the Law, 43 P.S. § 821(e).[13]  Because Employer did not file an appeal within 15 days of the determination, Claimant contends that that decision is final.  In making that argument, he also cites to Section 509 of the Law, which provides that "[a]ny decision made by the department or any referee or the board shall not be subject to collateral attack as to any application claim or claims covered thereby or otherwise be disturbed, unless appealed from."  43 P.S. § 829.

Section 501 of the Law sets forth how benefits may be awarded and denied, when a claimant or employer has to be notified of a determination and when the Department loses jurisdiction to revise claims.    Section 501(a)

---

[13] This provision provides:

> Unless the claimant or last employer or base-year employer of the claimant files an appeal with the board, from the determination contained in any notice required to be furnished by the department under section five hundred and one (a), (c) and (d), within fifteen calendar days after such notice was delivered to him personally, or was mailed to his last known post office address, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

43 P.S. § 821(e).  A Service Center may issue a revised notice of determination within the appeal period if no appeal has been filed.  However, once the appeal period has expired, the determination becomes final and the Board loses jurisdiction to consider the matter. *Pennsylvania Turnpike Commission v. Unemployment Compensation Board of Review,* 991 A.2d 971 (Pa. Cmwlth. 2009).

specifically deals with what occurs when a claimant files an appeal. It provides, among other things, that the Department shall "promptly examine each application for benefits and on the basis of the facts found by it shall determine whether or not the application is valid." 43 P.S. § 821(a). Section 501(b) provides that notice "shall be given in writing to the last employer of the claimant stating that an application has been filed" by one of its employees seeking unemployment compensation benefits, thus requiring that employer to provide information to the Department regarding the circumstances of employee's separation from employment. 43 P.S. § 821(b).

When the employer has not timely filed information that a claimant is not eligible for benefits, Section 501(c)(2) of the Law provides:

> Notice of such determination need not be given to the claimant if the claim is determined valid, but if the claim is determined invalid, **notice shall be given by the department in writing to the claimant stating that the claim is invalid and the reason therefor.**

43 P.S. § 821(c)(2) (emphasis added).

Under Section 501(c)(3) of the Law, "notice of such determination" need not be given to an employer unless the employer has provided information to the Department that the claimant is ineligible for benefits. It provides:

> Notice of such determination need not be given to any base-year employer or last employer of the claimant **unless such base-year employer or last employer has filed with the department information in writing**

14

> **which might raise a question as to the eligibility of the claimant for any reason other than his failure to comply with the provisions of section four hundred one (a)**, in which event notice shall be given as provided herein.

43 P.S. § 821(c)(3) (emphasis added).

When the employer files with the Department information that raises a question as to the eligibility of a claimant within 15 days, Section 501(c)(4) provides:

> [T]he department shall issue to such employer (i) **a notice in writing of its determination** with respect to each claim which is filed by the claimant for a week, the first day of which is on or before the date on which such information is filed, and (ii) a notice in writing of its determination with respect to the first valid claim which is filed by the claimant during the claimant's benefit year for a week, the last day of which is subsequent to the date on which such information is filed.

43 P.S. § 821(c)(4) (emphasis added).

However, if the employer files information *more* than 15 days after notice has been sent to it, that does not mean that the award of benefits cannot be challenged and the Department is not required to send it a notice of determination. Under Section 501(c)(5):

> If an employer files with the department such information **more** than fifteen days after notice required under five hundred one (a) or (b) was delivered to him

15

personally, or was mailed to his last known post office address, the department shall only issue to such employer (i) a notice in writing of its determination with respect to each claim which is filed by the claimant for a week, the first day of which is within the thirty-day period which immediately precedes the date on which such information is filed, and (ii) a notice in writing of its determination with respect to the first valid claim which is filed by the claimant during the claimant's benefit year for a week, the last day of which is subsequent to the date on which such information is filed.

43 P.S. §821(c)(5) (emphasis added).

Under Section 501(d) of the Law, the Department is required to notify "any employer or claimant who has been notified as required under subsections (a) and (c) of this section of any revision made in the determination as contained in the original notice given to such employer or claimant." 43 P.S. § 821(d). In other words, the Department's determination that Claimant was entitled to benefits is not a final determination because the Department still has the ability to revise its determination.

Section 501(e) of the Law provides that the Department can make revisions regarding eligibility for benefits until the determination of eligibility or ineligibility becomes "final" which is 15 days after written notice is delivered. It provides:

Unless the claimant or last employer or base-year employer of the claimant files an appeal with the board, from the determination contained in any notice required to be furnished by the department under section five hundred and one (a), (c) and (d), within fifteen calendar

16

days after such notice was delivered to him personally, or was mailed to his last known post office address, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

43 P.S. § 821(e); *see also Garza v. Unemployment Compensation Board of Review*, 669 A.2d 445, 447 (Pa. Cmwlth. 1995) (holding that a determination can be revised before it becomes final as long as no appeal has been filed, and that "if a determination is appealed within the 15 allotted days, it cannot then be revised even though it does not become final.").

To summarize, under Section 501 of the Law, when a claim is filed, the following is to occur:

- Employer is to receive notice that a claim is filed, and if it opposes the grant of benefits, employer should provide information within 15 days as to why benefits should not be granted.

- If an employer does not provide information within 15 days giving reasons why the claim should not be granted, the following is to occur:

  - If the claim is facially valid, then benefits can be granted without a notice of determination being issued;

  - If the claim is not facially valid and denied, then a notice of determination is issued from which a claimant can take an appeal.

- No notice of any determination is required to be given to an employer who has not provided information that the claimant is ineligible.

17

- If an employer files information after 15 days that claimant should be declared ineligible for benefits, then the employer is entitled to a notice of determination regarding its challenge to claimant's unemployment eligibility.

- The Department has no time limit to make a revision to an eligibility determination based on employer's information that a claimant is not eligible for UC benefits.

In this case, the Department sent Employer notice on October 17, 2013, that Claimant had applied for UC benefits. Employer did not respond in 15 days with information that Claimant was ineligible for benefits. Because Claimant's application provided a facially valid reason for UC benefits to be granted and Employer did not file a timely response, benefits could be awarded and no notice of determination had to be given to either Claimant or Employer. However, when Employer did provide information to the Charge Office that Claimant should be considered ineligible for benefits on November 5, 2013, the Department was required to issue a notice of determination of whether it still intended to grant benefits or if it was revising the original determination to deny benefits. Due to the Department's inaction, Employer's request was not addressed until August 21, 2014, when the Department issued the three determinations that found Claimant ineligible for benefits and imposed a fault overpayment and penalties. However, because the Department does not have a specific time limit during which it must issue notices of determination, it still had jurisdiction to issue those revised notices.

**B.**

In his original appeal, Claimant contended that the Board incorrectly imposed a fault overpayment because he supplied false information when applying for compensation. Because we did not address that issue in the original opinion before remand, we will address it now.

Section 804(a) of the Law provides that if a person receives unemployment compensation benefits due to his or her "fault," the claimant is responsible for repaying the amount received in error plus interest. 43 P.S. § 874(a). "The word 'fault' within the meaning of 804(a) of the Law connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches." *Amspacher v. Unemployment Compensation Board of Review*, 479 A.2d 688, 691 (Pa. Cmwlth. 1984) (citing *Summers v. Unemployment Compensation Board of Review*, 430 A.2d 1046 (Pa. Cmwlth. 1981)). Conduct that is designed to improperly and intentionally mislead the UC authorities is sufficient to establish a fault overpayment. *Castello v. Unemployment Compensation Board of Review*, 86 A.3d 294, 298 (Pa. Cmwlth. 2013). For example, an intentional misstatement on an application for benefits can support a finding of fault under Section 804(a). *Id.* In order to find fault, the Referee or Board must make some findings with regard to a claimant's state of mind. *Id.*

There is no dispute that Claimant reported that he was laid off from work rather than that he was terminated for willful misconduct when he made his application for UC benefits. Despite having received a letter from Employer relieving him of his duties due to "actions that were threatening, intimidating, and

19

physically aggressive," and despite having been escorted off the premises on the day of his suspension, Claimant contends that his belief that he was laid off was reasonable because he was sent home without being assigned additional hours, which is consistent with being laid off. (R. at Item No. 8, Referee's Hearing: Transcript of Testimony w/Claimant Exhibit, dated 10/17/2014.) He also contends that his belief was reasonable because he sought a legal opinion as to whether he was eligible for UC benefits prior to making the claim. In addition, at the time he made the application, he had not yet received the termination letter from Employer that he had been terminated for willful misconduct; though he admits he signed for benefits every two weeks between October 2013 and April 19, 2014, without informing the Department of the true reason for his discharge.

However, the Board rejected the argument that Claimant reasonably believed he was laid off, finding:

> [W]hen filing for benefits, the claimant told the Department that he was unemployed due to lack of work even though he was aware that he had been suspended due to the incident with the bottle of hand soap, was escorted off the premises, and was later discharged. The Board does not credit [Claimant's] testimony that he received the termination letter between October 17 and 19, 2013, after he filed his application on October 16, given the timing of when he decided to file for benefits. Even if he had not received the termination notice until after he filed his application, the claim record shows that the claimant spoke to a Department representative on October 30, 2013, to correct an error involving reporting his ability and availability to work, yet he did not correct the reason for his unemployment. The delay, the fault overpayment, and the penalties would have been avoided if [Claimant] had been honest with the Department. The Board concludes that the claimant knowingly and

20

> intentionally misreported his reason for unemployment to the Department in order to obtain benefits. Therefore the fault overpayment, penalty weeks, and additional penalty are appropriate.

(R. at Item No. 32, Board's Decision and Order, dated 5/23/2017 (Ineligible w/Fault Overpayment, Penalty Weeks, and 15% Penalty, p. 7.)) When a claimant fails to disclose material facts to obtain or increase UC benefits, a finding of fault overpayment is proper. *Summers*, 430 A.2d at 1048.

The Board is the ultimate fact finder in UC cases and has the sole discretion to determine the credibility of witnesses, resolve conflicts in the evidence and is free to accept or reject the testimony of any witness in whole or in part. *See Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385 (Pa. 1985). The Board was empowered not to accept Claimant's testimony that he had a reasonable belief that he was laid off rather than terminated, and it is not within this Court's authority to disturb the Board's credibility findings.

Accordingly, for the foregoing reasons, the Board's decision is affirmed.

_____
DAN PELLEGRINI, Senior Judge

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John E. Narducci,            :
          Petitioner     :
                            :
        v.             : No. 841 C.D. 2017
                            :
Unemployment Compensation     :
Board of Review,            :
          Respondent   :

# **O R D E R**

AND NOW, this 4<u>th</u> day of <u>April</u>, 2018, the Unemployment Compensation Board of Review's order dated May 23, 2017, is affirmed.

_____
DAN PELLEGRINI, Senior Judge